## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF KENTUCKY (Covington Division)

| | | |
|---|---|---|
| Sebastian Ernst<br>c/o Christopher Wiest<br>50 E. Rivercenter Blvd., Ste. 1280<br>Covington, KY 41011 | :<br><br>:<br><br>: | Case No. |
| **Plaintiff** | : | |
| v. | : | |
| Marty Hart, *in his individual and official capacities*<br>230 Main St.<br>Falmouth, KY 41040 | :<br><br>:<br><br>: | |
| And | : | |
| Sabrina Hazen, *in her individual and official capacities*<br>230 Main St.<br>Falmouth, KY 41040 | :<br><br>:<br><br>: | |
| And | : | |
| Broderick Schmeing, *in his individual capacity*<br>230 Main St.<br>Falmouth, KY 41040 | :<br><br>: | |
| And | : | |
| Kyle Florer, *in his individual capacity*<br>230 Main St.<br>Falmouth, KY 41040 | :<br><br>: | |
| And | : | |
| Ken Hall, *in his individual capacity*<br>230 Main St.<br>Falmouth, KY 41040 | :<br><br>: | |
| And | : | |
| City of Falmouth, Kentucky<br>c/o Mayor Sabrina Hazen | :<br><br>: | |

1

230 Main St.
Falmouth, KY 41040                                    :

    **Defendants**                                    :

## PLAINTIFF'S VERIFIED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF WITH JURY DEMAND ENDORSED

Plaintiff, by and through Counsel, and for his Verified Complaint, states as follows:

### Introduction

1. It is clearly established law that an arrest cannot be maintained without probable cause. It is also clearly established law that it violates the First Amendment to retaliate for protected activities under the First Amendment. Defendants violated this clearly established law in their arrest of the Plaintiff on April 14, 2025.

### Parties

2. Plaintiff is a resident and citizen of Falmouth, Kentucky, and the United States.

3. Defendant, City of Falmouth, Kentucky (hereinafter "City"), is a duly incorporated Home Rule City under a mayor-council plan, as set forth in KRS Chapter 83A, located in Pendleton County, Kentucky.

4. Defendant, Sabrina Hazen, is and was at all times relevant hereto, the Mayor of the City, and pursuant to KRS 83A.130, all executive power regarding the City is vested in the Mayor, and, among other things, she has the power to direct city officers, officials, and employees. As is relevant here, Defendant Hazen acted at all times relevant hereto under color of law. She is sued in her individual capacity for damages, including punitive damages, and in her official capacity for prospective injunctive relief.

5. Defendant, Marty Hart, is and was at all times relevant hereto, the appointed Chief of Police for the City, and, as is relevant here, Defendant Hart acted at all times relevant

2

hereto under color of law.  He is sued in his individual capacity for damages, including punitive damages, and in his official capacity for prospective injunctive relief.

6. Defendant, Broderick Schmeing, is and was at all times relevant hereto, an appointed Police Officer for the City, and, as is relevant here, Defendant Schmeing acted at all times relevant hereto under color of law.  He is sued in his individual capacity for damages, including punitive damages.

7. Defendant, Ken Hall, is and was at all times relevant hereto, an appointed Police Officer for the City, and, as is relevant here, Defendant Hall acted at all times relevant hereto under color of law.  He is sued in his individual capacity for damages, including punitive damages.

8. Defendant, Kyle Florer, is and was at all times relevant hereto, an appointed Police Officer for the City, and, as is relevant here, Defendant Florer acted at all times relevant hereto under color of law.  He is sued in his individual capacity for damages, including punitive damages.

## Jurisdiction and Venue

9. Subject matter jurisdiction over the federal claims and causes of action asserted by Plaintiff in this case is conferred on this Court pursuant to 42 U.S.C. §1983, 42 U.S.C. § 1988, 28 U.S.C. §1331, 28 U.S.C. §§ 2201 and 2202, and other applicable law.

10. Venue in this district is proper pursuant to 28 U.S.C. §1391 and other applicable law.

11. Venue in this division is appropriate, since all of the deprivations of Plaintiff's Constitutional Rights occurred in Pendleton County, Kentucky, and Defendants reside in this District and Division.

**Facts Common to all Claims**

12. Plaintiff, Sebastian Ernst, is a long-term resident, and business owner, within Falmouth, Kentucky.

13. In November 2022, Mr. Ernst was elected Mayor of Falmouth, Kentucky, running on a campaign that promised change within the City.  Those promises did not sit well with certain entrenched interests.  He took office January 1, 2023.

14. In early 2023, he also purchased a sheep statue and displayed it outside his business.  The statue was subsequently stolen in August, 2023, and the theft was reported to police.

15. During his tenure of mayor, Plaintiff exposed corruption, including against other Falmouth City and Pendleton County officials, including Defendant Hazen.  Plaintiff further advocated for allowing Pendleton County to provide utilities to the people of Falmouth, believing it would result in expanded access to utilities at a better quality and lower price.

16. Plaintiff's advocacy led to opposition against him, led by City Councilwoman, and now mayor, Defendant Sabrina Hazen.

17. On or about June 1, 2023, Plaintiff Ernst was informed that Hazen was assembling illegal meetings of elected officials to attempt to block Plaintiff's agenda. Ernst spoke against this.

18. In December 2023, a group chat of multiple Pendleton County officials and activists conspired to cause the removal of Sebastian Ernst.  Sabrina Hazen was in this group chat.

19. On December 19, 2023, then-councilwoman (and now Falmouth Mayor), Defendant Sabrina Hazen, introduced articles of impeachment against Plaintiff Sebastian Ernst, for, among other things, Mr. Ernst's speaking on City issues on his personal Facebook page, indicating that he was going to expose misconduct by a member of Council for an assault

4

on a minor, and Mr. Ernst's prohibition of political party meetings within the City building to maintain the non-partisan nature of the City. All of that is clearly established protected speech.

20. On or about late January 2024, the Council voted to impeach Mr. Ernst. The Falmouth Council held the impeachment proceeding on the day Mr. Ernst's wife was due to have their child. For the avoidance of all doubt, Sabrina Hazen was aware that Mr. Ernst's wife was having a child that day, so she deliberately orchestrated the scheduling of this hearing on that date to avoid Mr. Ernst's presence.[1] Following the impeachment, Mr. Ernst made clear in statements to the press,[2] on social media, and elsewhere, that he would run for the office again and win – and that speech also infuriated Hazen and Hart.

21. On or about mid-March to early April 2024, Falmouth police found the missing sheep statue and Chief Marty Hart acknowledged at that time that the statue belonged to Sebastian Ernst. In response, Mr. Ernst repeatedly contacted Chief Hart to collect the sheep statue. In response, Chief Hart told him that Mr. Ernst he could retrieve his statue after the investigation was over.

22. On February 15, 2025, Defendant Hazen texted Falmouth City Councilman Anthony Cox displaying her anger about Mr. Ernst's ongoing criticisms of her, Chief Hart, and others online and at public meetings, including on Mr. Ernst's Facebook page, stating: "I might

---

[1] While it is possible to contend that the impeachment effort and proceedings were in retaliation for protected speech (because they were), we do not make the allegation that Mr. Ernst's removal from office was in violation of the First Amendment, given timing concerns; the removal, however, is provided for background regarding the retaliatory animus of Defendants.
[2] https://www.wcpo.com/news/northern-kentucky/falmouth-mayor-removed-from-office-after-city-council-vote

have to stay off facebook for a while…. And I'm so annoyed with Sebastian and Keene for all the water drama to begin with when they tried to say we had lead in the water."

23. On April 6, 2025, Councilman Anthony Cox texted Sabrina Hazen "...Sebastian wants me to contact him." Hazen responded, "Oh I'm on the phone with him now. He wants us to pick him [for mayor]. I told him I'm not hand picking anyone but if we opened it to public and he could apply."

24. At this point, efforts continued to prevent Sebastian Ernst from becoming mayor of Falmouth again. Anthony Cox texted Hazen saying "KRS 83A.040(9) and the failed appeal states he can not fill the seat until 2027 anyway."

25. On April 8, 2025, Sabrina Hazen texted Anthony Cox, nervous that Sebastian Ernst might become or run for mayor, and frustrated with Ernst's ongoing public criticisms of her and other members of the City Council, including with respect to clean water access, and frustrated that no one else was joining her plan to silence Ernst, stated in text message: "I wonder if none of us speak of [sic] Brandon [Voelker] will say something. I guess I should have made it public my issues with Brandon. But will now. So was Brandon inviting Sebastian into the discussion on the utilities and everyone was just going to stay quiet. So I guess everyone is supporting Sebastian for mayor or are we just handing him the next election."

26. On April 9, 2025, Mayor Luke Price, who had replaced Mr. Ernst as Mayor, resigned, leaving a vacancy in the office of Mayor for Falmouth City Council to fill.[3] Marty Hart was given powers to be the acting Mayor upon that resignation and until the vacancy was filled (consistent with limitations set forth in KRS 83A.130(7) and (10)).

---

[3] https://www.wlwt.com/article/falmouth-kentucky-mayor-resigns-luke-price/64422893

27. On April 9, 2025, Defendant Hazen, showing a flagrant disregard for the First Amendment and the Kentucky Open Meetings Act, instructed former City Attorney Brandon Voelker to silence her critic, even though every other citizen could speak at the City Council Meeting, stated: "But on another note, please don't ever ask the impeached mayor if he 'agrees' or even suggest he is invited to speak or be included during a council discussion again in our meeting. Thank you."[4]

28. On April 9, 2025, Hazen sent a screenshot of her instruction to Voelker to censor Ernst to Anthony Cox, saying "There is Brandon's justification for trying to give Sebastian the floor or include him in our council conversation last night. The same day our mayor resigns our city attorney tried to include an impeached mayor in a council discussion in a public meeting."

29. On April 9, 2025, Hazen sent the same screenshot to City Councilwoman Joyce Carson, further expressing outrage that Mr. Voelker dared to permit a person who disagrees with her attend and speak at an open meeting: "The nerve of our city attorney to ask our impeached mayor if he agrees or invites him into a council discussion is just beyond me…I don't know why he would even allow Sebastian to have a chance to give his opinion in our meeting."

30. Hazen then communicated with Carson: "He hasn't said anything else back. But he was trying to explain why he was about to include Sebastian into our council discussion about

---

[4] Mr. Voelker advising the Council to permit Mr. Ernst to speak, as it permitted other members of the community to speak, was consistent with the First Amendment and appears to be a good faith attempt to avoid liability. *City of Madison, Joint Sch. Dist. No. 8 v. Wis. Emp. Rels. Comm'n*, 429 U.S. 167, 176 (1976). The Court later characterized the First Amendment violation in City of Madison as occurring "when the meetings were suddenly closed to one segment of the public even though they otherwise remained open for participation by the public at large." *Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 281 (1984).

his contract. That is when I shut the conversation down when he asked Sebastian if he agrees and went to start talking about our utilities.  And apparently by his response saying something about wanting to see if he has support or something is a lie, he was about to trash our utilities and tell us we need to sell it all and make it look like Sebastian was right on what to do with our city the entire time. That is why Brandon came and that is what Sebastian was there for. I'm just glad I spoke up and shut him up before he took it where he was headed. He had no right to even try and include an impeached mayor into a council discussion period."

31. Carson responded "I think he was there to have Craig vote no."  Hazen responded "That wasn't the only thing he was there for. But why is our city attorney addressing and inviting the impeached mayor into a council discussion the same day our mayor resigned."

32. Carson, pointing out Hazen's paranoia and motive to blame Sebastian Ernst for any political problem the city faces, responded, "I have no idea, but I don't think they are in cahoots unless I'm that naive.

33. Hazen, angered at Carson questioning her, responded, "He [Voelker] is a damn attorney and he isn't stupid. He is held to a professional higher standard. He is held to an ethical obligation under his license. Did you really think wherever Brandon was going along with the utilities and whatever Sebastian was going to say was going to be good for the city. Why was our city attorney about to say anything negative at all about the city? If we don't get a damn mayor in that seat to do what Luke couldn't and that was address Brandon then we are all screwed because Sebastian will win the next election because Brandon will continue to do stuff like the tennis courts crap telling them to get off immediately to make sure we loose the next election."

34. Carson responded "Does SE thinks he can get 3 people to support him? I don't think so."

35. Hazen responded, further demonstrating that she has weaponized the Falmouth city government to boost her electoral odds, "It wouldn't matter if he did, he can't legally hold the seat this term. But in 6 months he will start campaigning for next year election."

36. Carson responded, "Ugh. We've got to do lots of things and get a go getter in place asap. We have to find a solid person to run."

37. For the avoidance of all doubt, Plaintiff is a resident of Falmouth, Kentucky and has a right to attend public meetings in Kentucky without adverse government action.  He also had a right under Kentucky law to run for Mayor.

38. By no later than April 9, 2025, Hazen recognized that: (i) Mr. Ernst was going to run for Mayor in 2026; (ii) that Mr. Ernst was critical of her and others for corruption, misconduct, misuse of power, and related items and that she was infuriated by this; (iii) that her background presented problems for her to run as Mayor; (iv) that she needed to take action to prevent Mr. Ernst from running for Mayor, or, if she could not prevent it, that she needed to attempt to cause damage to Mr. Ernst's reputation.

39. Acknowledging that becoming Mayor would shine a spotlight on her, and expose her background to public scrutiny, further harming Hazen's reputation given that the only way she became mayor was by impeaching the prior mayor, Hazen texted Anthony Cox, "And I honestly don't know if I even want to be considered because I feel whoever takes the seat from council it is political suicide and a headache."

40. Hazen communicated the concerns in paragraphs 38 and 39, with Marty Hart, who shared and joined in these concerns and the conspiracy against Mr. Ernst.

41. April 14, 2025, at around 3:30 pm, Mr. Ernst went to City Hall, and specifically to Chief Hart to ask for his sheep statue back.  Chief Hart then contended, falsely, that the sheep was not Mr. Ernst's, even though Chief Hart had previously promised to return it.  The disagreement continued, with Chief Hart ordering Mr. Ernst to leave the office.  Mr. Ernst complied.

42. That same day, April 14, 2025, at around 4:30 pm, Chief Hart and Ken Hall encountered Mr. Ernst on the public sidewalk near his office as the Chief was jaywalking to cross the street.  Mr. Ernst asked Chief Hart "you jaywalking now?"  Chief Hart told him to get a picture of that.

43. Mr. Ernst, who intended and intends to return to his position as Mayor of Falmouth, then told Chief Hart, because of Chief Hart's misconduct and incompetence: "Your days are numbered, you'll be fired the first one... you'll be the first one fired, just so you know." This statement is protected under clearly established First Amendment Case Law.  Chief Hart, angered by Mr. Ernst's criticism of him, responded, "You'll be the first one to go to jail."  Chief Hart, in no uncertain terms, threatened to jail Mr. Ernst for his constitutionally protected speech.

44. Mr. Ernst left without further incident.

45. In retaliation for Sebastian's political promise to fire Marty Hart, Marty Hart and Ken Hall contacted Kentucky State Police on April 14, 2025 at 4:37 pm, accusing Sebastian Ernst of trespassing.  Specifically, KSP logged "THAT SEBASTIAN ERNST HAS BEEN TRESPASSED FROM ALL CITY PROPERTY DUE TO THREATS AND DISORDERLY CONDUCT.

46. For the avoidance of all doubt, there was no "threat" or "disorderly conduct." Instead, Mr. Ernst issued a promise to fire Marty Hart upon being sworn in as Mayor for incompetence and misconduct, which is constitutionally protected speech. No video or police report articulates any unprotected conduct committed by Ernst. In fact, the videos of the interaction between Sebastian Ernst and Marty Hart shows Marty Hart getting in Ernst's face, expressing hostility through his body language, and does not depict Sebastian Ernst engaging in any hostility, but simply calmly asking for the return of his property.

47. Chief Hart and Ken Hall, through the Falmouth Police Department, filed a KYIBRS Report, which reads:

> On 04/14/2025 at 1554 hrs. the Suspect (Ernst) entered the Falmouth Police Dept. to speak with Chief Hart. Mr. Ernst started causing a scene at the Police Dept. and was told to leave by Chief Hart at 1606 hrs. At 1630 hrs. Chief Hart and myself walked over to the Pendleton County Court House to speak to someone at the County Clerk's Office. The Office was closed, so myself and Chief Hart walked back across the street to the police station. Mr. Ernst was walking back and forth in front of the Falmouth Police Dept. as myself and Chief Hart started to walk into the Stations front door Mr. Ernst quickly approached Chief Hart and stated " You are going to be fired " You are going to lose your job". Chief Hart walked into the PD. and told me to go back out and advise Mr. Ernst that he was trespassed from all City of Falmouth owned locations and buildings. At 1640 hrs. I advised Mr. Ernst was advised that he was trespassed. At 1648 hrs. Mr. Ernst re-entered the Falmouth Police Dept. after being advised that he was trespassed. He stated that he wanted to file an open records request. He was advised that he had to request that online thru. the Police Dept. website. Mr. Ernst became argumentative once again so I turned and walked away from him. Mr. Ernst left the area in his vehicle at 1651 hrs.

48. As the above entry indicates, Ernst was not trespassed until Mr. Ernst indicated his intent to fire Chief Hart if he becomes mayor due to Chief Hart's misconduct and incompetence, which is protected speech under clearly established First Amendment law. He was not trespassed when he allegedly was "causing a scene" (which video shows he did not do). Video shows he did not make threatening gestures or engage in disorderly conduct. And the only video with audio is Ernst's which shows he made no threats.

11

49. That afternoon, Falmouth City Councilman Craig Owen invited Sebastian Ernst to attend the city council meeting so Mr. Ernst could make his case for why he should be appointed mayor.

50. That evening, Mr. Ernst attended the Falmouth City Council Meeting, which he had a right to attend under the Kentucky Open Meetings Act; see, also, KRS 61.810(1); KRS 61.810.

51. The City Council entered closed session to deliberate on the appointment of their new mayor, so Mr. Ernst waited in the hallway.  Defendant Hazen called the council into closed session in order to prevent Plaintiff Ernst from being able to make his case to the council on why he should become mayor – despite an invitation from another councilmember.  Ultimately, in violation of the Kentucky Open Meetings Act, the Council voted in closed session to appoint Hazen as Mayor.

52. While waiting, Mr. Ernst was approached by Officer Florer and Officer Schmeing of the Falmouth Police Department, under orders from Chief Hart and Sabrina Hazen.  Officer Florer and Schmeing, under direction of Chief Hart and Sabrina Hazen, deemed Mr. Ernst to be "an unwanted subject."

53. Officer Schmeing asked Mr. Ernst if he had been issued a trespass warning by Chief Hart.  Mr. Ernst denied receiving a trespass warning.  Officer Schmeing asked Mr. Ernst to step outside to discuss this incident further.  Mr. Ernst refused, and asked Officer Schmeing to contact the Falmouth City Attorney.

54. Officer Schmeing contacted then-Falmouth City Attorney Brandon Voelker, who informed Officer Schmeing that Mr. Ernst had a right to be at the meeting, and that any arrest of Mr. Ernst would be unlawful.

12

55. Unhappy with this answer, Officer Florer and Officer Schmeing fished for another lawyer and legal opinion, and called Pendleton County Attorney Stacey Sanning.  County Attorney Sanning further informed the officers that they did not have probable cause to issue an arrest against Mr. Ernst in connection with any attendance at a public meeting, and that she would dismiss any such charges issued against Mr. Ernst, as the arrest and charge would be unconstitutional.

56.  Chief Hart, with the knowledge and backing of Hazen, and unsatisfied with the answer of these two attorneys, and with the knowledge and at the behest of Defendant Hazen, then called J.D. Chaney of the Kentucky League of Cities, and asked Chaney if it is legal to arrest someone who had been trespassed from city property.  Deliberately, and with malice, they omitted the critical fact that they were dealing with a member of the public attending a public meeting.  With facts insufficient to the case at hand, while the two attorneys who said the arrest was illegal were fully aware of the situation, Mr. Chaney said that there would be a lawful arrest.

57. At this point, Officer Schmeing and Officer Florer unlawfully ordered Mr. Ernst to leave, including because he wished to carry out the retaliatory orders of Hazen and Hart; Mr. Ernst politely refused.

58. Officer Schmeing and Officer Florer then placed Mr. Ernst under arrest for trespassing,[5] even though there was no probable cause for that arrest.

---

[5] KRS 511.090 provides: "(1) A person 'enters or remains unlawfully' in or upon premises when he is not privileged or licensed to do so. (2) A person who, regardless of his intent, enters or remains in or upon premises which are at the time open to the public does so with license or privilege unless he defies a **lawful order** not to enter or remain personally communicated to him by the owner of such premises or other authorized person."

KRS 511.080 provides that "A person is guilty of criminal trespass in the third degree when he knowingly enters or remains unlawfully in or upon premises."

59. Officer Florer and Chief Hart, also had the opportunity to prevent the unlawful arrest of Mr. Ernst, but both chose not to do so.

60. After the arrest of the Plaintiff by Defendants, the Pendleton County Sheriff's Department transported Mr. Ernst to the Bourbon County Detention Center at the request of the Defendants. Mr. Ernst was released the next morning (April 15, 2025), and was forced to spend a night in jail due to the retaliatory arrest.

61. On April 15, 2025 at 8:07 AM, Sabrina Hazen, infuriated with Falmouth City Councilman Craig Owen for inviting Ernst to the meeting, texted Craig Owen and threatened him with adverse government action, insinuating that allowing Sebastian Ernst to exercise his First Amendment rights is bad for the city as it threatens Sabrina Hazen's political agenda: "I really hope you consider what is best for the city and disassociate yourself from that situation with adverse parties to the city. I hope you had no more involvement yesterday with colluding between our city attorney and Sebastian. It is all going to be investigated. As elected officials we are held to an oath to the city."

62. Craig Owen did not respond.

63. The day after the arrest, Falmouth City Councilman Craig Owen condemned the arrest and, in his capacity as a city councilman, indicated that Sebastian Ernst was welcome on city property, and that the arrest was inappropriate. Specifically, the post reads:

---

Any trespass order that purported to extend to council meetings open to the public, and without disruption at those meetings, was not a **lawful order** under KRS 511.090. KRS 61.810(1); KRS 61.810; *Detroit Free Press v. Ashcroft*, 303 F.3d 681, 695 (6th Cir. 2002); *Globe Newspaper Co. v. Superior Ct.*, 457 U.S. 596, 606-7 (1984); *Press-Enterprise Co. v. Superior Ct.*, 478 U.S. 1, 9-10 (1986) (*quoting Press-Enterprise Co. v. Superior Ct.*, 464 U.S. 501, 510 (1984)); *Seum v. Osborne*, No. 3:17-CV-00069-GFVT, 2018 U.S. Dist. LEXIS 167807, 2018 WL 4685442, at *2-3, 5 (E.D. Ky. Sept. 28, 2018); *Logsdon v. Hains*, 492 F.3d 334 (6th Cir. 2007) (order to leave was not lawful when the person was engaged in protected activity and had a privilege to be there).

As a current member of the Falmouth City Council, I feel it's my duty to speak up about what happened on Monday afternoon, and to hopefully set the record straight on the statements put out by City Hall and the Falmouth Police Department. Earlier today, I met with the former Mayor, Sebastian Ernst, to talk about what led to his arrest at City Hall on Monday night.

Mr. Ernst shared a video with me of what happened at the police department which completely contradicts the claims issued in the public statements that were put out on the official city platforms. In the video, Mr. Ernst doesn't raise his voice, doesn't disrupt anything, and doesn't threaten anyone. In fact, it's the opposite. He was calm and respectful while Chief Hart appeared angry and threatened to arrest him, even though he broke no laws. He only showed up to seek the return of his personal property, which he had clearly proven was his.

I believe that the contradictions between the details that were presented in the public statements, and what I saw in the video could potentially put the City of Falmouth at serious legal risk. The City Attorney, Brandon Voelker, resigned shortly after the incident involving Sebastian Ernst's unlawful arrest, which I feel speaks volumes about how serious and wrong this situation is.

At Monday night's City Council meeting, Chief Hart ordered two officers to arrest Mr. Ernst for "trespassing." What the news hasn't mentioned is that I personally invited Mr. Ernst to attend the city council meeting to discuss the possibility of him filling the mayoral vacancy, something many people in the community have voiced support for over the past week.

According to the information I was given, when Mr. Ernst was told to leave, he respectfully declined, stating the order was unlawful. He asked the officers to check with the City Attorney first. They did, and the City Attorney confirmed that Mr. Ernst had every right to be there. The officers then reached out to the County Attorney, Stacey Sanning, who also made it clear that Mr. Ernst wasn't doing anything wrong and that no charges would be pursued by her office if he was arrested. All of this is clearly stated in the arrest citation Mr. Ernst received, yet these details were omitted by the various news agencies that have reported on the matter. Why were these details omitted?

I've known Sebastian Ernst for nearly ten years. He's someone who cares deeply about Falmouth and its future. He's been honest, driven, and determined to make positive change, even when others tried to push him out of the political process. Mr. Ernst has real ideas and a plan to move our city forward. Anyone can see this if they visit downtown Falmouth and witness the hard work that he and his family have put into bringing it back to life. Monday night, he stood up for his rights and for the people of Falmouth, even though he knew it might lead to his unlawful arrest. He was taken away from his family, thrown in a jail cell, and had his character attacked, all because he dared to challenge the status quo and pursue his desire to save Falmouth from the awful mess it has found itself in.

15

Now, more than ever, he needs our support. I ask the people of Falmouth to stand with him, just as he has stood with many of you. We can't allow this kind of injustice to continue in Falmouth. It's time to come together, speak the truth, and push back against forces trying to divide our city.

I hope and pray Sebastian Ernst receives real justice for all he's been put through over the years, and that he is compensated accordingly for this act of malice perpetrated by officials representing the City of Falmouth.

Stay strong Sebastian, you have an entire community of supporters behind you."

64. After this post, Hazen texted Anthony Cox, threatening retaliation against Craig Owen: "KLC is pissed right now about what Craig is doing and this is going to blow up worse and he is about to get in trouble. He isn't being transparent he is lying. There was an entire previous altercation before Sebastian started recording. So Sebastian is just recording the reaction after he had already threatened Marty. And Brandon quit because he is in hot shit and knew I was going to fire him. He is doing the same crap Sebastian used to do and lie and mislead people. I'm so over it."

65. For the avoidance of all doubt, the only "threat" Ernst issued was a promise to fire Marty Hart upon being sworn in as mayor, which is constitutionally protected speech. No video or police report articulates any unprotected conduct committed by Ernst. In fact, the videos of the interaction between Sebastian Ernst and Marty Hart shows Marty Hart getting in Ernst's face, expressing hostility through his body language, and does not depict Sebastian Ernst engaging in any hostility, but simply calmly asking for the return of his property.

66. On April 16, 2025 at 8:36 pm, Sabrina Hazen, enraged by Owen's condemnation of the arrest of Sebastian Ernst, texted Owen: "It was bad enough for you to even suggest or argue the city council do [sic] something illegal and then now to get on Facebook and try and sabotage the city for Sebastian, you really need to start asking yourself are you on

16

council to serve the residents of Falmouth and the best interest of the city or are you on council to try and get the city to do something illegal?"

67. Craig Owen, again, did not respond.

68. Further that night, knowing her actions and the actions of the city were patently illegal, and in light of her encouragement of the actions of Defendant Marty Hart and the other officers, Hazen texted Anthony Cox about how the arrest of Ernst "is a possible litigation matter now."  Cox responded, suggesting going into closed session to discuss the arrest. Cox further says "Problem being is we obviously have a mole to the plantiff [sic]. Makes closed sessions and having a strategy hard if we arent [sic] confident in its confidentiality. Certainly complicates this… A lot."

69. Hazen responded, knowing she has lost the confidence of Councilman Owen and the people of Pendleton County, "Yes, which is so frustrating because there isn't anything I can do about what Craig is doing right now. But most of Sebastian's supporters are county residents."

70. In retaliation against Voelker for advising against illegally arresting Ernst, Hazen texted Cox, "I am going to talk to KLC about me filing the bar complaint against Brandon tomorrow. Craig is going to force the city to have to start taking action we were waiting to so we can start showing people who is in the wrong here."

71. At this point, Hazen furthered her retaliation campaign against Sebastian Ernst.  Using the City of Falmouth's official Facebook Page, Hazen defamed Ernst, maliciously and knowingly falsely stating, in part, that Mr. Ernst had engaged in repeated harassment of city officials for over an hour, falsely informing the public that the City Attorney had indicated that the arrest of Mr. Ernst was legal when the City Attorney gave the exact

opposite advice, and trumpeting his false arrest to embarrass Mr. Ernst and try to damage him politically.  This arrest was highly publicized, with news media reporting on it, further damaging Ernst's reputation.

72. On April 17, 2025, Sabrina Hazen texted Marty Hart, "Meeting went Good."  Marty Hart responded, "Thanks how many people asked for my resignation… lol"  Sabrina Hazen responded "NONE." "Seriously it went really well. The hot topic was my baby daddy."

73. Marty Hart responded, "That's more stupid than Sebastian."

74. On May 3rd, 2025, at 6:48 PM, Hazen again texted Craig Owen, infuriated at the fact that he invited Sebastian Ernst, her political opponent, to the city council meeting to make his case for why he should be reinstated as mayor, asking: "Why did you invite Sebastian to the meeting that night? Why the personal invite?"

75. Craig Owen responded "Because I wanted him to attend, simple as that."

76. Hazen, knowing Owen's invitation invalidated her illegal retaliatory effort to silence Ernst, responded: "But why did you want him to attend? He is allowed to attend any open meeting [that Hazen openly ordered other city officials to silence him at] as long as he follows the same rules that apply to everyone else. So why a personal invite to that meeting? We already know that Sebastian called Brandon. And then Brandon called Marty. So when did Sebastian call you?"

77. Owen responded, "Sorry, I don't remember the specifics about who called who and when."

78. Hazen, attempting to determine whether she needs to retaliate against Owen for associating with Ernst, texted Owen, "Did you know beforehand what Sebastian and Brandon were doing?"

79. Owen responded, "Nope, I wasn't aware of anything."

80. Hazen responded, "I know they both have unclean hands in this, I'm just trying to figure out if your hands are dirty too or if you were just an unknowing participant. Do you agree that Brandon needed fired?"

81. Owen did not respond to Hazen's assertion that Mr. Voelker needed to be fired for advising the city that arresting Ernst at the meeting would be illegal under the Fourth Amendment.

82. Plaintiff was charged by Defendants Schmeing and Florer and at the direction of, and in concert with Defendants Hazen and Hart, with criminal trespass third degree.  KRS 511.080.[6]  A true and accurate copy of the charge is attached as **Exhibit 1**.  It accurately reflects the fact that the officers and Marty Hart, had been told not to arrest Mr. Ernst by both the City and County Attorneys.

83. For the avoidance of doubt, "since World War II, the 'just following orders' defense has not occupied a respected position in our jurisprudence, and officers in such cases may be held liable under § 1983 if there is a reason why any of them should question the validity of that order."  *Kennedy v. City of Cincinnati*, 595 F.3d 327, 337 (6th Cir. 2010).

84. Here, Schmeing, Florer, Hart and Hazen had been told by *both* the City Attorney and the relevant prosecuting authority, the County Attorney, that Mr. Ernst had a lawful right to be at the meeting, that he could not be required to leave, and that they should not arrest him. They all had actual knowledge not to proceed with an arrest, but with a retaliatory and malicious motive proceeded anyways.

---

[6] A person is guilty of criminal trespass in the third degree when he knowingly enters  or remains unlawfully in or upon premises.

85. The definitions for that section are contained in KRS 511.090, and that section specifically provides that "(1) A person 'enters or remains unlawfully' in or upon premises when he is not privileged or licensed to do so;" and "(2) A person who, regardless of his intent, enters or remains in or upon premises which are at the time open to the public does so with license or privilege unless he defies a lawful order not to enter or remain personally communicated to him by the owner of such premises or other authorized person."

86. There was no lawful order given to the Plaintiff to depart prior to arrest, as required by KRS 511.090, as the directive to leave a public meeting, without being disruptive or disorderly, were unlawful.  See fn 2.

87. The criminal charge was promptly dismissed, for lack of probable cause by the Pendleton County Attorney on May 6, 2025.

88. On May 8, 2025, Sabrina Hazen texted Craig Owen, "I can understand why he is upset we kicked the stand in city attorney out. And I did it for the conflict of interest because they were obviously telling Sebastian stuff and giving advice that would be adverse to the city's best interests."  Sabrina Hazen is of the opinion that advising the City to follow the United States Constitution is "adverse to the city's best interests."

89. Owen responded, "He's never discussed any conversations with me that were between him and Brandon, other than what I told you and what he mentioned to you earlier."

90. Hazen, further attempting to use her position to bully people out of advocating for positions she does not hold, responded, "And I already confirmed with Morgain Patterson that Sebastian is wrong on all things in that complaint, regardless of how many people we have on council we are still a body of 6 and need 4 for a quorum no matter how many empty seats we have. And I am legally the mayor."

20

91. For the avoidance of all doubt, the Plaintiff, in his interactions with Defendants, never raised his voice, got upset, spoke in an antagonizing manner, or otherwise acted in a disorderly manner.

92. Plaintiff has been damaged as a consequence of the foregoing, including: (i) economic damages; and (ii) mental distress, pain and suffering, humiliation, and other damages in an amount to be determined at trial.

93. Plaintiff further seeks punitive damages against Defendants Hazen, Hart, Schmeing and Florer, in their individual capacities, since the actions complained of were motivated by evil motive or intent, and/or involved reckless or callous indifference to the federally protected rights of Plaintiff. Indeed, these Defendants were explicitly told what they were doing was illegal by the relevant City and County attorneys, and proceeded anyways. Plaintiff demands judgment on these punitive damages against these Defendants, in their individual capacities, in an amount to be determined at trial.

### COUNT I – Violation of the First Amendment/First Amendment retaliation/Conspiracy to engage in First Amendment Retaliation (42 USC § 1983, all Defendants)

94. Plaintiff reincorporates the preceding paragraphs as if fully written herein.

95. Defendants, acting under color of any statute, ordinance, regulation, custom, or usage, of the Commonwealth of Kentucky, subjected the Plaintiff, a citizen of the United States, to be deprived of his rights, privileges, or immunities secured by the Constitution, and thus are liable to the party injured under 42 U.S.C. §1983.

96. Plaintiff engaged in protected speech critical of Defendants Hazen, Hart, and others, and/or protected petitioning activity, including, but not limited to, the speech articulated in paragraphs 13, 15-17, 19, 20, 22, 25, 27-30, 33, 35, 36, and 38-43, all of which was protected First Amendment activity under clearly established law.

21

97. No one can seriously question that, "[a]s a general matter," the First Amendment prohibits government officials from subjecting individuals to "retaliatory actions" after the fact for having engaged in protected speech. *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019) (internal quotation marks omitted); *see also Hartman v. Moore*, 547 U. S. 250, 256 (2006); *Lozman v. City of Riviera Beach*, 585 U.S. 87 (2018).

98. Criticizing public officials is plainly and clearly established as protected activity. *Lozman v. City of Riviera Beach*, 585 U.S. 87 (2018); *Connick v. Myers*, 461 U.S. 138, 148 (1983); *Holzemer v. City of Memphis*, 621 F.3d 512, 520 (6th Cir. 2010); *Barrett v. Harrington*, 130 F.3d 246, 264 (6th Cir. 1997) ("[T]he First Amendment right to criticize public officials is well-established . . . . Furthermore, it is well-established that a public official's retaliation against an individual exercising his or her First Amendment rights is a violation of § 1983."); *Cooperrider v. Woods*, 127 F.4th 1019 (6th Cir. 2025); *Blackwell v. Nocerini*, 123 F.4th 479 (6th Cir. 2024); *Rudd v. City of Norton Shores*, 977 F.3d 503, 514 (6th Cir. 2020); *Barrett v. Harrington*, 130 F.3d 246, 262 (6th Cir. 1997).

99. Likewise, petitioning government officials for redress is clearly established. *Lozman,* 585 U.S. 87, 101 ("the 'right to petition as one of the most precious of the liberties safeguarded by the Bill of Rights.'"); *Nailon v. Univ. of Cincinnati*, 715 Fed. Appx. 509, 514 (6th Cir. 2017), *quoting Jenkins v. Rock Hill Local Sch. Dist.*, 513 F.3d 580, 586 (6th Cir. 2008). Further there is a clearly established right to make private requests to government officials for assistance, even verbally or informally. *Holzemer*, 621 F.3d 512, 519; *Stinebaugh v. City of Wapakoneta*, 630 F. App'x 522, 528 (6th Cir. 2015). So is the right to dispute government actors. *Nailon*, 715 Fed. Appx. 509, 514.

100. Second, adverse action was taken against the Plaintiff, including, but not limited to: (i) the false entries related to alleged harassment and the trespass entries by Hart and Hall, including as set forth in paragraphs 45-48; (ii) the subsequent illegal order to leave a lawful public meeting by Schmeing, including as set forth in paragraphs 52-57; (iii) the false arrest and charging of Mr. Ernst by Schmeing and Florer, at the behest and encouragement of Hazen and Hart, all without probable cause and/or for matters that would not and have never incurred charges in the past within the City of Falmouth, and against the explicit advice of the City Attorney and County Attorney, including as set forth in paragraphs 58-60, 82-87; (iv) the smear campaign by Hazen that followed, including as set forth in paragraph 71; and (v) the harassment and attempts to intimidate and threaten anyone perceived as siding with Mr. Ernst with respect to his speech, as set forth in paragraphs 25, 27, 28, 29, 30, 33, 38, 39, 40, 61, 64, 65, 66, 68, 69, 70, 74, 76, 80, 88 and 90.

101. Clearly established law establishes the activities set forth in paragraph 100 are all adverse action. *Rudd v. City of Norton Shores*, 977 F.3d 503 (6th Cir. 2020) (false arrest and campaign of harassment); *Lozman*, 585 U.S. 87 (false arrest); *Houston Cmty. Coll. Sys. v. Wilson*, 595 U.S. 468, 477, (2022) (initiating criminal prosecution); *Bloch v. Ribar*, 156 F.3d 673 (6th Cir. 1998) (public release of information meant to embarrass); *Barrett v. Harrington*, 130 F.3d 246 (6th Cir. 1997) (false statements to the media); *McElhaney v. Williams*, 81 F.4th 550 (6th Cir. 2023) (excluding from public events).

102. In all events, any one of the activities in Paragraph 100 would deter a person of ordinary firmness from engaging in protected speech, and thus meets the adverse action requirement. *Thaddeus-X v. Blatter*, 175 F.3d 378 (6th Cir. 1999) (en banc).

103. Moreover, the protected activities including, but not limited to, that contained in paragraphs 13, 15-17, 19, 20, 22, 25, 27-30, 33, 35, 36, and 38-43, were the but-for cause of the adverse actions as set forth in paragraphs 25, 27, 28, 29, 30, 33, 38, 39, 40, 45-48, 52-57, 58-61, 64, 65, 66, 68, 69, 70-71, 74, 76, 80, 82-88 and 90, because they all occurred within a very short period of time of the protected activities in question, and because in certain of those actions, Defendants explicitly mention and/or reference the protected activities as being a basis for the action, and/or otherwise admit that the protected activities were the basis of the action.

104. Defendants Hazen, Hart, Hall, Schmeing, and Florer also conspired with each other to violate Mr. Ernst's First Amendment rights, as demonstrated by their attorney-shopping for an opinion that would justify their retaliatory arrest after being told by both the City and County Attorney not to proceed, and by then electing to proceed with the arrest, also rendering each of them liable for acts in furtherance of that conspiracy. *Rudd*, 977 F.3d 503, 512-513; *Beck v. Prupis*, 529 U.S. 494, 502-03 (2000). Specifically, Defendants Hazen, Hall, Hart, Schmeing, and Florer had a single plan: to retaliate against Plaintiff for his protected activities, including, without limitation, engaging in the activities set forth in paragraphs 25, 27, 28, 29, 30, 33, 38, 39, 40, 45-48, 52-57, 58-61, 64, 65, 66, 68, 69, 70-71, 74, 76, 80, 82-88 and 90 that includes ginning up a false arrest of Mr. Ernst for his protected speech, publicly smearing Mr. Ernst with false statements about that event, illegally attempting to exclude him from public meetings, and harassing anyone perceived as siding with Mr. Ernst; Defendants Hazen, Hall, Hart, Schmeing, and Florer each shared in this general conspiratorial objective; and an overt act was committed in furtherance of

the conspiracy, namely the false arrest and trespass order(s).  They are thus all jointly and severally liable under a conspiracy theory.

105. Further, in addition to their personal facilitation and participation, as described herein, Defendants Hart and Florer are liable under a failure to intervene theory because they observed or had reason to know that an illegal arrest without probable cause was going to occur in retaliation for speech, had reasonable opportunity to intervene, and they failed to intervene, in contravention of clearly established law set forth in *Floyd v. City of Detroit*, 518 F.3d 398, 406 (6th Cir. 2008).

106. Defendants Hazen and Hart are also liable under a supervisory theory of liability in that both "implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of" Defendants Schmeing and Florer, complained of herein, and thus the incident with Mr. Ernst was causally connected to their intentional acts and deliberate indifference, as set forth in clearly established law set forth in *Campbell v. City of Springboro, Ohio*, 700 F.3d 779, 789-790 (6th Cir. 2012).

107. Defendant, City of Falmouth is likewise liable for the foregoing First Amendment retaliation, under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978) for the foregoing First Amendment violations, because (i) the actions complained were done pursuant to an illegal official policy of the City; (ii) the officials with final decision-making authority ratified and/or directed the complained of illegal actions; (iii) the City had and may still have a policy of inadequate training or supervision, with respect to First Amendment retaliation;; and (iv) the City had, at all times relevant hereto, and may still have a custom of tolerance or acquiescence of federal rights violations.  *See Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005).

108. Furthermore, as a consequence and the proximate and actual cause of the foregoing and the actions of Defendants, Plaintiff has suffered various damages, including, without limitation, mental distress, pain and suffering, humiliation, economic damages, and other damages, such as will be proven at trial, which exceeds $25,000.

109. Plaintiff further seeks punitive damages against Defendants Hazen, Hall, Hart, Schmeing, and Florer, in their individual capacities, since the actions complained of were motivated by evil motive or intent, and/or involved reckless or callous indifference to the federally protected rights of Plaintiff.  Plaintiff demands judgment on these punitive damages against these Defendants, in their individual capacities, in an amount to be determined at trial, but not less than $25,000.00, exclusive of interest and costs.

110. Plaintiff further seeks his reasonable attorney fees and costs under 42 U.S.C. § 1988 for these violations.

111. Plaintiff seeks prospective preliminary and permanent injunctive relief against Defendants Hart and Hazen in their official capacities, and against the City of Falmouth, for an order lifting the retaliatory "no Trespass" order, as well as their ongoing efforts to retaliate against the Plaintiff, including with respect to harassing him and threatening anyone who associates with him.

**COUNT II – Violation of the Fourth Amendment, seizure/false arrest without probable cause and Conspiracy to violate the Fourth Amendment  (42 USC § 1983, all Defendants)**

112.  Plaintiff reincorporates the preceding paragraphs as if fully written herein.

113. The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."

114. Defendants, acting under color of any statute, ordinance, regulation, custom, or usage, of the Commonwealth of Kentucky, subjected the Plaintiff, a citizen of the United States, to

be deprived of his rights, privileges, or immunities secured by the Constitution, and thus are liable to the party injured under 42 U.S.C. §1983.

115. The arrest of Plaintiff by Defendants Schmeing, and Florer, and at the direction of Defendants Hart and Hazen, was without probable cause, and violated clearly established case law. *Miller v. Sanilac County*, 606 F.3d 240 (6th Cir. 2010); *Green v. Throckmorton*, 681 F.3d 853 (6th Cir. 2012); *Lyons v. City of Xenia*, 417 F.3d 565, 574 (6th Cir. 2005); *Beck v. Ohio*, 379 U.S. 89, 91 (1964); *Courtright v. City of Battle Creek*, 839 F.3d 513, 520 (6th Cir. 2016) ("The constitutional right to 'freedom from arrest in the absence of probable cause' is clearly established within our circuit."); *Parsons v. City of Pontiac*, 533 F.3d 492, 504 (6th Cir. 2008) ("The law was therefore clearly established that arrests without probable cause violated the Constitution at the time of [the plaintiff's] arrest in 2004."); *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 310 (6th Cir. 2005) ("It is beyond doubt that in 2001 'the law was clearly established that, absent probable cause to believe that an offense had been committed, was being committed, or was about to be committed, officers may not arrest an individual.").

116. Defendants Hazen, Hall, Hart, Schmeing, and Florer also conspired with each other to violate Mr. Ernst's Fourth Amendment rights, as demonstrated by their ginned up entries and purported no-trespass entries, followed by their attorney-shopping for an opinion that would justify their retaliatory arrest after being told by both the City and County Attorney not to proceed and there was no probable cause, and by then electing to proceed with the arrest, also rendering each of them liable for acts in furtherance of that conspiracy. *Rudd*, 977 F.3d 503, 512-513; *Beck v. Prupis*, 529 U.S. 494, 502-03 (2000). Specifically, Defendants Hazen, Hall, Hart, Schmeing, and Florer had a single plan: to gin up a false

arrest of Mr. Ernst for his protected speech; Defendants Hazen, Hall, Hart, Schmeing, and Florer each shared in this general conspiratorial objective; and an overt act was committed in furtherance of the conspiracy, namely the false arrest and trespass order(s).  They are thus all jointly and severally liable under a conspiracy theory.

117. Further, in addition to their personal facilitation and participation, as described herein, Defendants Hart and Florer are liable under a failure to intervene theory because they observed or had reason to know that an illegal arrest without probable cause was going to occur i, had reasonable opportunity to intervene, and they failed to intervene, in contravention of clearly established law set forth in *Floyd v. City of Detroit*, 518 F.3d 398, 406 (6th Cir. 2008).

118. Defendants Hazen and Hart are also liable under a supervisory theory of liability in that both "implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of" Defendants Schmeing and Florer, complained of herein, and thus the incident with Mr. Ernst was causally connected to their intentional acts and deliberate indifference, as set forth in clearly established law set forth in *Campbell v. City of Springboro, Ohio*, 700 F.3d 779, 789-790 (6th Cir. 2012).

119. Defendant, City of Falmouth is likewise liable for the foregoing Fourth Amendment retaliation, under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978) for the foregoing First Amendment violations, because  (i) the actions complained were done pursuant to an illegal official policy of the City; (ii) the officials with final decision-making authority ratified and/or directed the complained of illegal actions; (iii) the City had and may still have a policy of inadequate training or supervision, with respect to Fourth Amendment arrests and requirements for probable cause; and (iv) the City had, at

28

all times relevant hereto, and may still have a custom of tolerance or acquiescence of federal rights violations. *See Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005).

120. Furthermore, as a consequence and the proximate and actual cause of the foregoing and the actions of Defendants, Plaintiff has suffered various damages, including, without limitation, mental distress, pain and suffering, humiliation, economic damages, and other damages, such as will be proven at trial, which exceeds $25,000.

121. Plaintiff further seeks punitive damages against Defendants Hazen, Hall, Hart, Schmeing, and Florer, in their individual capacities, since the actions complained of were motivated by evil motive or intent, and/or involved reckless or callous indifference to the federally protected rights of Plaintiff. Plaintiff demands judgment on these punitive damages against these Defendants, in their individual capacities, in an amount to be determined at trial, but not less than $25,000.00, exclusive of interest and costs.

122. Plaintiff further seeks his reasonable attorney fees and costs under 42 U.S.C. § 1988 for these violations.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against Defendants as prayed for, including:

A. That Plaintiff be awarded money damages, including compensatory and punitive damages, against the individual capacity Defendants, in an amount to be proven at trial, and exceeding $25,000.00, exclusive of interest and costs;

B. That Plaintiff be awarded compensatory money damages against the City of Falmouth, in an amount to be proven at trial, and exceeding $25,000.00, exclusive of interest and costs;

C.  Permanent and preliminary prospective injunctive relief be issued, including, without

limitation, for the relief contained in paragraph 111;

D.  That trial by jury be had on all issues so triable;

E.  That Plaintiff be awarded his costs in this action, including reasonable attorney fees under

42 U.S.C. § 1988; and

F.  Such other relief as this Court shall deem just and proper.

Respectfully submitted,

/s/Christopher Wiest_____
Christopher Wiest (KY 90725)            Thomas B. Bruns (KY 84985)
Theodore J. Roberts (KY 100610)         Bruns Connell Vollmar & Armstrong
Chris Wiest, Atty at Law, PLLC          4555 Lake Forrest Drive, Suite 330
50 E. Rivercenter Blvd, Ste. 1280       Cincinnati, Ohio 45242
Covington, KY 41011                     Tel.:   513/312-9890
Tel:    513/257-1895                    tbruns@bcvalaw.com
chris@cwiestlaw.com

## JURY DEMAND

Pursuant to FRCP 38 and other applicable law, Plaintiff demands trial by jury on all causes so
triable.

/s/ Christopher Wiest_____
Christopher Wiest (KBA 90725)

VERIFICATION

Pursuant to 28 U.S.C. 1746, I, Sebastian Ernst, declare under penalty of perjury that I have read
the foregoing Verified Complaint, and state that the factual statements therein are true and
accurate to the best of my knowledge.

Executed on July 22, 2025.

Sebastian Ernst